NOT DESIGNATED FOR PUBLICATION

No. 118,930

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

DAVID M. HORN,
*Appellant*.

MEMORANDUM OPINION

Appeal from Douglas District Court; PAULA B. MARTIN, judge. Opinion filed July 12, 2019.
Affirmed.

*Nicholas David* and *Michelle David*, of The David Law Office LLC, of Lawrence, for appellant.

*Kate Duncan Butler*, assistant district attorney, *Charles E. Branson*, district attorney, and *Derek Schmidt*, attorney general, for appellee.

Before SCHROEDER, P.J., BUSER and ATCHESON, JJ.

PER CURIAM: We remanded this case to the Douglas County District Court for the limited purpose of determining whether statements Defendant David M. Horn made to police officers were voluntary or the product of an impermissibly coercive interrogation. The district court held an evidentiary hearing and concluded the statements were voluntary. Horn has appealed that ruling. We find no error and affirm.

1

A jury convicted Horn of domestic battery based on an incident involving him and his wife at their apartment. A Lawrence police officer questioned Horn at the apartment, and the State sought to introduce his statements during the trial. Horn objected and requested what is commonly known as a *Jackson v. Denno* hearing to test the voluntariness of those statements. See *Jackson v. Denno*, 378 U.S. 368, 376, 84 S. Ct. 1774, 12 L. Ed. 2d 908 (1964); *State v. Betancourt*, 301 Kan. 282, 289, 342 P.3d 916 (2015) (noting that "at a *Jackson v. Denno* hearing, the issue before the court is whether defendant's statement or confession was voluntary"). The district court declined to hold a hearing. Horn appealed his conviction, arguing the district court's failure deprived him of a fair trial.

We conditionally affirmed his conviction and remanded to the district court specifically to conduct a *Jackson v. Denno* hearing. We recognized that if Horn's statements to the police officers were, in fact, voluntary, they were properly admitted during the trial, and he was not prejudiced. Conversely, if the statements were involuntary and should have been excluded as evidence, then Horn did not receive a fair trial given the highly conflicting accounts of what happened between him and his wife. *State v. Horn*, No. 114,078, 2016 WL 7494377, at *6 (Kan. App. 2016) (unpublished opinion), *rev. denied* 306 Kan. 1317 (2017) (*Horn I*).

In conformity with the remand order, the district court held a *Jackson v. Denno* hearing on December 5, 2017, at which Horn and Lawrence Police Officer Jonathan Gardner testified. The district court filed a two-page memorandum decision on December 21 outlining its factual findings and concluding Horn's statements were voluntary. Based on that determination, Horn received a fair trial, and his conviction remained in place. Horn has appealed.

In reviewing the district court's factual findings and legal conclusions, we apply a well-known bifurcated standard. We ask whether substantial competent evidence

2

supports the factual findings, giving due deference to the district court's reconciliation of conflicting evidence and its related credibility determinations. We then consider whether those findings support the legal conclusions, a call we make without deferring to the district court's ultimate ruling. *State v. Gilliland*, 294 Kan. 519, Syl. ¶ 1, 276 P.3d 165 (2012); *State v. Fernandez-Torres*, 50 Kan. App. 2d 1069, 1076, 337 P.3d 691 (2014).

Ultimately, the voluntariness of a person's statements to law enforcement officers turns on the totality of the circumstances bearing on whether those statements are the product of a free and independent will. *Fernandez-Torres*, 50 Kan. App. 2d at 1075. The Kansas appellate courts have developed a set of factors for assessing voluntariness. As we outlined in *Horn I*:

> "Among the factors the district court may consider are: '(1) the accused's mental condition; (2) the duration and manner of the interrogation; (3) the ability of the accused on request to communicate with the outside world; (4) the accused's age, intellect, and background; (5) the fairness of the officers in conducting the interrogation; and (6) the accused's fluency with the English language.' *State v. Gilliland*, 294 Kan. 519, Syl. ¶ 3, 276 P.3d 165 (2012); see also *Fernandez-Torres*, 50 Kan. App. 2d at 1075. A government agent may induce an involuntary statement through improper threats of harm, promises of benefit, a combination of the two, or other undue influence over the suspect. *Hutto v. Ross*, 429 U.S. 28, 30, 97 S. Ct. 202, 50 L. Ed. 2d 194 (1976); *State v. Brown*, 286 Kan. 170, 174, 182 P.3d 1205 (2008). The State has to prove the voluntariness of a defendant's statements by a preponderance of the evidence. *State v. Randolph*, 297 Kan. 320, 326, 301 P.3d 300 (2013)." 2016 WL 7494377, at *2.

The district court acknowledged those guiding principles in its memorandum decision and applied them in arriving at its conclusion that Horn's statements were voluntary.

The hearing transcript reflects that Horn and Officer Gardner gave somewhat differing versions of their interaction in the apartment. The district court's factual findings in the memorandum decision essentially track Officer Gardner's account and, thus,

3

necessarily reflect an implicit credibility determination against Horn. See *State v. Walker*, No. 117,909, 2018 WL 3077089, at *2 (Kan. App. 2018) (unpublished opinion) (district court's comments in bench ruling amount to implicit credibility determination) *rev. denied* 309 Kan. ___ (December 31, 2018); *State v. Cheatham*, No. 106,413, 2012 WL 4678522, at *2 (Kan. App. 2012) (unpublished opinion) (appellate court infers credibility determination based on district court's factual findings comporting with one witness' account of relevant events rather than conflicting account from second witness). We review the evidentiary record in that light.

The district court found that three Lawrence police officers came to the apartment in response to a 911 call from Horn's wife, who said she had locked herself in the bathroom because Horn had hit her. The district court further found that Horn's wife had given the officers permission to enter the apartment. They did so.

The officers extracted Horn's wife from the bathroom, and one of them talked to her about what had happened. Officer Gardner questioned Horn about his version of what led up to the 911 call. The questioning took place in the master bedroom of the apartment. Horn was in his underwear and sat on the side of the bed. After the officers arrested Horn, they allowed him to get dressed before taking him to the law enforcement center.

The district court found that Horn first encountered the police officers in a hallway in the apartment after they had come in and that the officers asked him to go into the bedroom. That finding does not match up with the testimony of either Horn or Officer Gardner at the *Jackson v. Denno* hearing. According to Gardner, Horn remained in the bedroom. We don't see that particular finding to be significant to the voluntariness inquiry. Everybody agrees Horn was questioned in the bedroom.

4

The district court found that although Officer Gardner stood between Horn and the bedroom door, Horn never asked to leave or was in any way physically restrained during the questioning. The district court characterized the questioning as "conversational" in tone. The entire investigation lasted between 45 and 50 minutes. The officers made no threats of harm or promises of benefits to Horn to induce him to answer the questions. The district court found that Horn was "an adult in his thirties" with "educational accomplishments reflect[ing] intelligence." Consistent with the specific factors the appellate courts have recognized, the district court noted that Horn is fluent in English. The district court also noted the absence of any evidence the officers exerted undue influence over Horn.

Apart from the district court's description of the initial encounter taking place in the hallway, all of its findings are supported in Gardner's testimony.

In its memorandum decision, the district court specifically discounted Horn's testimony that he was drunk when the officers arrived at the apartment and asked him questions. The district court gave "little weight" to Horn's assertion and found that he "understood the questions" he was asked and offered "appropriate" responses. So even if Horn had been drinking, which the district court doubted, his insobriety did not render his statements less than voluntary.

The district court concluded that the questioning of Horn was noncustodial, meaning a reasonable person would have concluded he or she was free to terminate the interrogation or to leave, and Horn's statements were voluntary. The district court's findings support the legal conclusion that Horn's will was not overborne and his statements were voluntary. We agree with that conclusion and affirm the district court's ruling following the *Jackson v. Denno* hearing.

In his brief on appeal, Horn has raised for the first time a claim that the district court violated his right to a public trial protected in the Sixth Amendment to the United States Constitution when it conducted part of the jury selection in private. Only the prosecutor, Horn and his lawyer, the district court, and a court reporter were present as individual potential jurors were asked about their exposure to and attitudes about domestic violence. The examination was done in a way that precluded the attendance of anyone else. The record on appeal contains no objection from Horn's trial lawyer and is consistent with acquiescence. Horn did not assert denial of a public trial as a point in his appeal in *Horn I*—a procedural marker an issue has been abandoned. See *State v. Littlejohn*, 298 Kan. 632, 655-56, 316 P.3d 136 (2014) ("issue not briefed . . . deemed waived and abandoned").

We decline to consider the public trial issue for the first time now. It could have been raised in *Horn I* and wasn't. In *Horn I*, this court conditionally affirmed the conviction and remanded for the singular purpose of allowing the district court to conduct a *Jackson v. Denno* hearing. That's all the district court was supposed to do. And that's all Horn could appeal from—the mandate on remand didn't reopen the case for the assertion of new issues unrelated to the voluntariness of his statements and the district court's handling of the *Jackson v. Denno* hearing.

The mandate rule strictly limits the district court to considering only those issues and performing only those functions specifically identified in an appellate court's remand order. *In re Care & Treatment of Emerson*, 306 Kan. 30, 35, 392 P.3d 82 (2017); *State v. Kleypas*, 305 Kan. 224, 296-97, 382 P.3d 373 (2016). The rule has been codified in K.S.A. 60-2106(c) ("Such mandate . . . shall be controlling in the conduct of any further proceedings necessary in the district court."). Although the rule rests on prudential considerations, it should be rigorously enforced to insure the orderly and timely disposition of cases and to avoid serial appeals of issues that could have and should have been raised in an initial appeal. The rule is considered nearly ironclad. See *Kleypas*, 305

6

Kan. at 297 (holding district court obligated to comply with mandate and reserving question whether district court or parties may request appellate court to modify mandate to alter proceedings required on remand). We are unpersuaded that we should expand this appeal beyond review of the matters identified in the mandate for consideration on remand.

Affirmed.